**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DESERY MARTIN CHASE,

    Plaintiff,

v.

                                   CASE NO.: 8:19-cv-00216-MSS-AEP

UNIVISTA INSURANCE
CORPORATION,

    Defendant.
_____/

## AMENDED COMPLAINT

1. Unwanted "Robocalls"[1] are the #1 consumer complaint in America today.

2. The people complaining about harassing robocalls is increasing at an alarming rate. In 2015, 2,125,968 complained to the Federal Trade Commission (FTC) and Federal Communications Commission (FCC), in 2016 this number was 3,401,614 2016 and in 2017 it was 4,501,967.[2]

3. Univista Insurance Corporation robotexted the Plaintiff approximately 8 times.

4. Univista Insurance Corporation called the Plaintiff approximately 300 times.

5. Univista Insurance Corporation has a corporate policy to robotext people and were the subject of a very recent class action asserting similar claims as here.

6. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'

---

[1] It is axiomatic that text messages are considered "Robocalls" for purposes of the TCPA.

[2] It is important to recognize these merely reflect the number of individuals that complained to these agencies; the number of people that have been victimized by illegal robocalling abuse could be close to 100,000,000 in the last 3 years

2

137 Cong. Rec. 30, 821 (1991).  Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank*, F.S.B., 746 F. 3d 1242, 1256 (11th Cir. 2014).  Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

7. Plaintiff, Desery Martin Chase, alleges Defendant, Univista Insurance Corporation, sent automated text messages approximately 8 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and asserts an Invasion of Privacy ("IOP") count since they called her almost 300 times in outrageous fashion to try to sell her insurance that she repeatedly said she doesn't want in violation of her right to privacy.

8. Robotexts are very inexpensive to make.  As was noted in a Senate hearing on the subject: "[w]ith such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

9. The TCPA was enacted to prevent companies like Univista Insurance Corporation from invading American citizens' privacy and prevent illegal robocalls.

10. Congress enacted the TCPA to prevent real harm.  Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243,

§§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

11. According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls (and text messages) are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

## JURISDICTION AND VENUE

12. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

13. Violations described in the Complaint occurred while Plaintiff was in Pinellas Park, FL.

## FACTUAL ALLEGATIONS

14. Plaintiff is a natural person and citizen of the State of FL, residing in Pinellas Park, FL.

15. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

16. Defendant is a Corporation with its principal place of business in Miami, Florida, and conducts business in the State of Florida.

17. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (727) 623-5911.

4

18. Plaintiff was the "called party" during each phone call and text message subject to this lawsuit.

19. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling and sending text messages several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

20. Defendant did not have written express consent or even the "express consent" necessary to text or call her.

21. "Express consent" is narrowly construed by the Courts.

22. It is the Defendant's burden to prove they had "express consent" per the TCPA to send the Plaintiff text messages on her cell phone using an "automatic telephone dialing system" (ATDS).

23. Defendant was put on notice Plaintiff did not want the Defendant contacting her.

24. Defendant was told repeatedly that Plaintiff's was not interested in their services and to stop calling and sending text messages.

25. Defendant did not have the express consent of the Plaintiff to call her or send text messages on the accounts they called her on.

26. Plaintiff expressly revoked any express consent Defendant may have mistakenly believed it had for placement of text messages to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

27. Defendant made at least one call to (727) 623-5911.

28. Defendant sent at least one text message to (727) 623-5911.

29. Defendant sent at least three (3) text message to (727) 623-5911 using an ATDS.

30. Each text message the Defendant made to (727) 623-5911 in the last four years was made using an ATDS.

31. Each text the Defendant made to the Plaintiff's cell phone was done so without written consent of the Plaintiff.

32. Defendant has called and sent automated text messages to other people's cell phones without their express consent.

33. Each text message the Defendant made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

34. Plaintiff repeatedly requested the Defendant to stop calling and sending text messages to her cell phone, however, the Defendant continued to make calls and send robotexts.

35. Plaintiff's conversations with the Defendant putting them on notice that they did not want more phone calls or text messages were ignored.

36. Defendant has recorded at least one conversation with the Plaintiff.

37. Defendant has recorded numerous conversations with the Plaintiff.

38. Defendant has made approximately three hundred (300) calls and 8 robotext messages to Plaintiff's aforementioned cellular telephone number since in or about April of 2017, which will be established exactly once Defendant turns over their dialer and phone records.

39. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abusive robotexts and solicitation calls.

40. Defendant has been sued in federal court where the allegations include: calling or texting an individual using an ATDS after the individual asked for the calls to stop.

41. By effectuating these unlawful text messages, Defendants have caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

42. Defendant's aggravating and annoying robotext messages trespassed upon and interfered with Plaintiff's rights and interests in her cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

43. Defendant's aggravating and annoying telephone calls trespassed upon and interfered with Plaintiff's rights and interests in her cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

44. Defendant's robotext messages harmed Plaintiff by wasting her time.

45. Defendant's telephone calls harmed Plaintiff by wasting her time.

46. Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used."  In re: *Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007).  Defendant's text messages harmed Plaintiff by depleting the battery life on her cellular telephone, and by using minutes allocated to Plaintiff by her cellular telephone service provider.

47. Defendant's corporate policy and procedures are structured as to continue to call and send text messages to individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have mistakenly believed it had.

48. Defendant's corporate policy and procedures provided no means for the Plaintiff to have her aforementioned cellular number removed from the call list.

49. Plaintiff expressly revoked any consent Defendant may have mistakenly believed it had for placement of robotext messages to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant's placement of

the text messages. Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

50. Defendant never had the Plaintiff's expressed consent for placement of text messages to her aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice.

51. None of Defendant's text messages sent to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

52. Defendant violated the TCPA with respect to the Plaintiff.

53. Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

### COUNT I
**(Violation of the TCPA)**

54. Plaintiff incorporates Paragraphs one (1) through fifty-three (53).

55. Defendant willfully violated the TCPA with respect to the Plaintiff each time they sent text messages to the Plaintiff and after she revoked her consent.

56. Defendant knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialed texts made to Plaintiff's cellular telephone after Plaintiff revoked her consent.

57. Defendant never had express written consent to solicit their services to Plaintiff on her cellular phone or landline.

58. Defendant never had express written consent to send automated text messages to Plaintiff's cell phone.

59. Defendant, Univista Insurance Corporation, repeatedly sent non-emergency text messsages to the wireless telephone number of Plaintiff using an automatic telephone dialing

8

system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

60. As a result of Defendant's illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

61. As a result of Defendant's illegal conduct, Plaintiff suffered actual damages and is entitled to up to $1500 for each text message.

62. Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, Univista Insurace Corporation, from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## COUNT II
### (Invasion of Privacy – Intrusion Upon Seclusion)

63. Plaintiff incorporates Paragraphs one (1) through fifty-three (53).

64. Defendant through its conduct, has repeatedly and intentionally invaded Plaintiff's privacy.

65. All of the text messages sent to Plaintiff's cell phone by Defendant and its agents using an automatic telephone dialing system were made in violation of the TCPA, and were unreasonable and highly offensive invasions of Plaintiff's right to privacy.

66. Defendant's persistent autodialed text messages to both her cellular phone and home telephone eliminated Plaintiff's right to be left alone.

67. Defendant's autodialed texts disrupted Plaintiff's privacy, disrupted Plaintiff's sleep, disrupted Plaintiff during mealtimes, disrupted Plaintiff during her work, and continually frustrated and annoyed Plaintiff.

68. These persistent autodialed solicitations eliminated the peace and solitude that the Plaintiff would have otherwise had in Plaintiff's home and anywhere else Plaintiff went with her cellular phone.

69. By calling Plaintiff approximately 300 times Plaintiff was severely harassed and had no escape from these calls either in her home or when she left the home.

70. By persistently dialing Plaintiff's cellular phone without prior express consent, Defendant invaded Plaintiff's right to privacy, and caused Plaintiff to suffer concrete and particularized harm.

71. Defendant's harassing conduct and tactic of repeatedly calling Plaintiff to both her cellular and home telephone after requests to stop is highly offensive to a reasonable person.

72. Defendant intentionally intruded upon Plaintiff's solitude and seclusion.

73. As a result of Defendant's action or inaction, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

Respectfully submitted,

William "Billy" Peerce Howard
William "Billy" Peerce Howard, Esq.
Florida Bar No.: 0103330
Billy@TheConsumerProtectionFirm.com
Amanda J. Allen, Esq.
Florida Bar No.: 0098228
Amanda@TheConsumerProtectionFirm.com
The Consumer Protection Firm

                                        4030 Henderson Boulevard
                                        Tampa, FL 33629
                                        Telephone: (813) 500-1500
                                        Facsimile: (813) 435-2369
                                        *Attorney for Plaintiff*